**NORTHFIELD INSURANCE COMPANY, Plaintiff,**

v.

**Alex RODRIGUEZ d/b/a Alex Tire Shop, Defendant.**

**Civil Action No. SA–16–CV–932–XR**

United States District Court,
W.D. Texas, San Antonio Division.

Signed 06/05/2017

Kennetha W. Lucas, Lashandra Nichole Wooten, Christopher W. Martin, Martin Disiere Jefferson & Wisdmon, L.L.P., Houston, TX, for Plaintiff.

Mark Darling, Mark Darling, Attorney at Law, PC, San Antonio, TX, for Defendant.

## ORDER

XAVIER RODRIGUEZ, UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff Northfield Insurance Company's ("Northfield") Mo-

tion for Summary Judgment (docket no. 16). Defendant Alex Rodriguez ("Rodriguez") did not file a response to Northfield's motion. After consideration, the Court will grant Plaintiff's motion.

### Background

This is a declaratory judgment action, stemming from an insurance coverage dispute after a lawsuit was filed in the 438th Judicial District Court of Bexar County, Texas styled *Maria Rocha, Individually, as next friend of Amy Garcia, A Minor, and as Representative of the Estate of Christian Garcia, Deceased vs. Wal–Mart Stores, Inc., Wal–Mart Stores Texas, LLC and Alex's Tire Shop*, Cause No. 2016–CI–10692 (the "Underlying Lawsuit"). The Underlying Lawsuit arises from an automobile accident that occurred on June 10, 2016. Pl.'s Mot. Summ. J. Ex. A–5, First Original Pet. at ¶ 4. Doc. No. 16. Maria Rocha was allegedly driving on Interstate 10 in Kerr County, Texas with her son, Christian Garcia, and her daughter, Amy Garcia, when Ms. Rocha's left-rear tire delaminated. *Id.* Ms. Rocha lost control of her vehicle and it entered into a roll sequence. *Id.* Ms. Rocha and Amy Garcia were seriously injured in the incident, and Christian Garcia was killed. *Id.* Ms. Rocha purchased the alleged delaminated tire from Rodriguez a short time before the incident. *Id.* Ms. Rocha asserts Rodriguez committed acts of negligence that were the proximate causes of the incident. *Id.*

At the time of the incident, Northfield had issued a commercial general liability policy No. WS242784 to Rodriguez, effective July 31, 2015 through July 31, 2016 (the "Policy"). In relevant part, the Policy provides coverage for

> Those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" ... to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those dam-

ages even if the allegations are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" ... to which this insurance does not apply.

Policy, Section 1—Coverages at ¶ 1(a). The policy, however, contains a "products-completed operations hazard" exclusion, which excludes from coverage:

a. All "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Policy, Section 5—Definitions at ¶ 16(a).

In the Underlying Lawsuit, Ms. Rocha sued Rodriguez for negligence. Pl.'s Mot. Summ. J. Ex. A–5, First Original Pet. at ¶ 6. Rodriguez forwarded notice to Northfield that the Underlying Lawsuit had

been filed on June 27, 2016. Northfield sent Rodriguez a letter denying coverage under the Policy, reasoning that the products-completed operations hazard exclusion precludes coverage. Pl.'s Mot. Summ. J. Ex. C, Letter to Rodriguez.

·On September 19, 2016, Northfield filed the lawsuit currently before the Court seeking declarations that they have no duty to defend or indemnify Rodriguez against the claims in the Underlying Lawsuit. Rodriguez filed an answer on October 27, 2016. Northfield then filed this motion for summary judgment.

## Standards of Review

### I. Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declarations, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (citing *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952)). Consequently, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.*

Insurance coverage disputes are frequently resolved in actions for declaratory judgment. *Harris v. United States Fid. & Guar. Co.*, 569 F.2d 850, 852 (5th Cir. 1978). However, § 2201 is only a procedural provision that extends to controversies in the jurisdiction of the federal courts. *Gaar v. Quirk*, 86 F.3d 451, 453–54

(5th Cir. 1996). Therefore, the declaratory judgment must have an independent basis for subject matter jurisdiction. *Lowe v. Ingalls Shipbuilding, Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984). The jurisdictional requirements are met in the present case as there is diversity of citizenship under 28 U.S.C. § 1332. Consequently, the requests for declaratory relief are properly before this Court.

### II. Summary Judgment

Summary judgment should be granted only when the moving party has shown that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(A). The moving party always has the initial burden of informing the court of the basis of the motion and identifying portions of the record it believes shows an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party overcomes its initial burden, the nonmoving party must provide specific facts that shows a genuine issue exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Facts must be viewed in the light most favorable to the nonmoving party. *Id.*

## Discussion

Northfield seeks declaratory judgment on both its duty to defend and duty to indemnify Rodriguez. Texas's rules of construction govern this case since it is a diversity case. *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir. 1995). In Texas, an insurer's duty to defend is distinct from its duty to indemnify. *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009); *see also King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

The duty to defend is determined by applying the "eight corners" or "complaint allegation" rule. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996). This rule requires the trier of fact to only look at the allegations in the complaint and the insurance policy to determine whether a duty to defend exists. *Id.* A duty to defend only exists when the facts alleged in the complaint, if taken as true, have the potential to state a cause of action that falls within the policy. *Cont'l Sav. Ass'n v. U.S. Fid. & Guar. Co.*, 762 F.2d 1239, 1243 (5th Cir.), *amended on other grounds*, 768 F.2d 89 (5th Cir. 1985).

The insured has the burden of establishing that the claim falls within the policy, and the insurer has the burden of establishing that an exclusion in the policy avoids or defeats coverage. *Canutillo*, 99 F.3d at 701. Any ambiguities in the policy will be liberally construed in favor of the insured. *Id.* However, if the policy is not ambiguous, the fact finder must apply the one reasonable construction of the policy. *Id.*

Although the duty to defend is based solely on the allegations of the complaint and the insurance policy, the duty to indemnify is based on the facts of the case. *City of Coll. Station v. Star Ins. Co.*, 735 F.3d 332, 340 (5th Cir. 2013); *see also Canutillo*, 99 F.3d at 701. Consequently, the duty to indemnify is a narrower duty. *See Canutillo*, 99 F.3d at 701. Usually, a duty to indemnify is only justiciable after a judgment has been rendered against the insured. *Farmers Texas Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83 (Tex. 1997). The policy coverage may turn on facts from the underlying lawsuit and, therefore, the duty to indemnify will be contingent on the findings. *See id.* at 84. However, an insurer's duty to indemnify can be determined with the pleadings alone if the same reasons that negate the duty to defend also negate any possible duty to indemnify. *City of Coll. Station*, 735 F.3d at 340.

## I. Duty to Defend

Northfield argues it is entitled to summary judgment regarding its duty to defend Rodriguez because the products-completed operations hazard exclusion contained in the Policy excludes completed work that results in bodily injury away from Rodriguez's premises. Specifically, Northfield argues that Rodriguez's work, which allegedly caused the bodily injuries, had been completed and the injury occurred away from Rodriguez's premises, which falls within the Policy exclusion. Since a duty to defend is based on the terms of the insurance contract, Northfield argues there is no duty to defend because the contract excludes the claims in the Underlying Lawsuit.

To determine a duty to defend, the trier of fact applies the "eight corners" rule. *Canutillo*, 99 F.3d at 701. The trier of fact first looks at the allegations in the underlying lawsuit and then applies the allegations to the policy to determine whether the claims fall within the policy coverage. *See id.*

### a. The First Four Corners: The Underlying Lawsuit

In the Underlying Lawsuit, Ms. Rocha alleges that she sought Rodriguez's service advice and installation services, and that she bought the alleged defective tire from Rodriguez. The tire Ms. Rocha bought from Rodriguez allegedly delaminated while she was driving on Interstate 10, causing her vehicle to rollover. Ms. Rocha sued Rodriguez for negligence, and she alleged Rodriguez was the proximate cause of the accident and resulting injuries, damages, and death.

### b. The Second Four Corners: The Policy

Northfield argues that the tire and services rendered to Ms. Rocha by Rodriguez fall within the products-completed operations hazard exclusion in the Policy. The Policy excludes coverage for any bodily injury or property damage that is included within the products-completed operations hazard. The products-completed operations hazard includes bodily injury and property damage occurring away from the insured's premises and arising out of the insured's product or work.

The Policy defines "your product" as any goods or products sold or handled by the insured or other parties trading under the insured's name and any warranties or representations made regarding the fitness, quality, or performance of "your product." The Policy defines "your work" as any work or operations performed by the insured or on the insured's behalf.

In *United States Fire Insurance Co. v. Massey*, the Fifth Circuit determined that similar definitions of "your work" and "your product" were unambiguous and applied to the rendition of services as well as the sale of products. 40 F.3d 385 (5th Cir. 1994). In *Massey*, the court concluded that maintenance on a sprinkler system fell squarely in the definition of "your work." Similarly, Rodriguez's service and tire sale fall squarely in the definitions of "your work" and "your product." Rodriguez is in the business of selling tires, and he was selling his product to Ms. Rocha.

Texas courts have also found similar definitions of the products-completed operations hazard to be unambiguous. *See Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co.*, 394 S.W.3d 228, 237 (Tex. App.–El Paso 2012, pet. denied). In *Burlington*, the court concluded that a "products-completed operations hazard" provision was an unambiguous contract provision that should be given its plain

meaning. *Id.* It held that the exclusion bars coverage that arises out of the insured's work or product, and occurs away from the insured's premises. *Id.* at 236. Similarly, the products-completed operations hazard exclusion in the Policy applied to bodily injuries occurring away from Rodriguez's premises and arising out of the shop's work or product.

The products-completed operations hazard exclusion in the Policy is unambiguous. The tire and services rendered were Rodriguez's product and work. The accident took place away from Rodriguez's premises, on Interstate 10. Furthermore, Rodriguez's work on the tire and car was complete. Ms. Rocha could have returned to the shop to have the tires rotated, but Rodriguez's work was essentially complete. The Policy covers the possibility of Ms. Rocha returning to get maintenance on the tire by treating this occurrence as completed.

Consequently, Northfield had no duty to defend Rodriguez because the Policy excluded any coverage for the allegations brought by Ms. Rocha.

## II. Duty to Indemnify

The duty to indemnify is usually justiciable only after a judgment has been rendered against the insured. *Griffin*, 955 S.W.2d at 83. However, a duty to indemnify is justiciable before a final judgment if the duty to indemnify is negated by the same reasons that negated the duty to defend. *Id.* at 84.

In *Griffin*, the court concluded the duty to indemnify was justiciable before a final judgment in the underlying lawsuit. *Id.* The insurance policy in *Griffin* covered auto accidents, but the insured was being sued for negligence as the result of a drive-by shooting. *Id.* at 82. The insurance company had no duty to defend since the allegations did not stem from an auto acci-

dent. *Id.* at 83. Consequently, the insurance company had no duty to indemnify either since there were no facts that could be developed in the underlying lawsuit that could transform the shooting into an auto accident. *Id.* at 84.

Ms. Rocha's accident, similar to the drive-by shooting in *Griffin*, cannot be transformed into something it is not. The accident took place away from Rodriguez's premises. The tire was not in possession of Rodriguez. All work on the tire had been completed, according to the Policy. Consequently, Northfield's duty to indemnify was negated by the same reasons its duty to defend was negated.

### Conclusion

For the above-stated reasons, the Court finds the products-completed operations hazard exclusion to the Policy plainly and specifically negates coverage for the claims alleged against Rodriguez in the Underlying Lawsuit, discharging Northfield from any duty to defend or indemnify Rodriguez against liability arising from the Underlying Lawsuit. Accordingly, Plaintiff Northfield Insurance Company's Motion for Summary Judgment (docket no. 16) is hereby **GRANTED**. The Court will issue a separate Judgment pursuant to Rule 58.

It is so ORDERED.